Reese, J.
delivered the opinion of the court.
The action in this case is brought to subject the plaintiff in error as endorser of a note payable at the Memphis Bank, and of which that bank at the time of its maturity was the holder. The note was made in the month of June, and made payable in October afterwards. At the time the note was made endorsed and became the property of the bank, and for a long time before, the plaintiff in error had a fixed residence in Randolph as a merchant. About a month after the making of the note, he left Randolph for the town of Columbia, Middle Tennessee, and returned to Randolph to reside about November or December afterwards. There is some contrariety of testimony in the record, as to whether Harris, at the time he left Randolph, proposed to change his domicil from that place to Columbia. He did in fact settle in Columbia.
*520 When the note fell due in October, the protest and notice of non-payment were forwarded by mail to Randolph. The notary enquired of the cashier of the bank, as to the residence of Harris, and was informed that he resided inRandolph. The cashier so believed, for Harris had done considerable business with the bank before that time, and all the notices had been sent to Randolph. It was not shown that the board of directors in fact knew of the change of domicil. Randolph is fifty miles from Memphis, and there is considerable commercial and other in-tercommunications between the two places. When a party at and before the time of making a note, has a fixed residence and place of business, known to the holder, and which continues at the time the holder became possessed of the note, and the party afterwards, and before the maturity of the note, changes his domicil, but the holder, at the time of maturity, is in point of fact ignorant of such change, and sends the notice to the place of such former residence, the notice will bé sufficient, unless proximity of place, frequency of intercommunication, or circumstances of notoriety attending or following the change of domicil, and of such a character as to amount to evidence that the holder di'd know of such change, or if ignorant, that he was ignorant because he omitted the care and attention which belongs to ordinary diligence. This is upon the principle, that where a party has a fixed residence and place, of business known to the holder at the time of his receiving the note, a change of domicil as a matter of fact is not to be presumed; and if the holder acts upon such knowledge, he will not be chargeable with negligence, unless he did know, or from circumstances shown ought to have known of such change of domicil.
We understand, from the charge of the Circuit Court, as set forth in the record, that it was the purpose of the honorable Judge to state the law as we have above stated it. The charge has undergone in the argument of counsel some criticism for its supposed obscurity, and in other respects. But the meaning of what the court did charge, we regard as consistent with our view of the law: and what the court was asked to charge, but *521 refused to charge, we think was properly refused. There is nothing in the record to show that a charge more precise, or *522 more amplified, would have been or ought to have been followed by a different verdict.
Let the judgment be affirmed.
*521 NoT-E. — Farmers' & Merchants’ Bank vs. Eddings. — tThis case, though it turn’s on the weight of evidence as to a question of fact, yet as it illustrates the principles of commercial law in reference to notice, it perhaps is worthy of insertion.
Green, J.
This is a suit against the endorser of a promissory note. .Notice to the defendant was not sent to the post-office nearest his residence or at which he usually did business. The principal question contested before the jury, was, whether the holder or their agent had used due diligence in endeavoring to ascertain the place to which the notice should have been sent. The charge of the court was not excepted to, and the jury found for the defendant. The plaintiff appealed to this court, and insists that the evidence of diligence is full and ample, and thatthe verdict of the jury is wholly unsupported ; and therefore this court, upon the principles that govern Us action in such cases, should award a new trial.
The plaintiff proved by Mr. Rose, the notary public who protested the note, that it was his usual custom to make enquiry of persons he supposed ought to know the-residence of parties, and then act upon such information. He was led from information thus obtained to send notice of the protest to the defendant at Birch Pond, being satisfied that was his post-office from such information. He thinks he obtained his information from Mr. Lofland, cashier of the Farmers* and Merchants’ Bank at Memphis. The witness does not certainly recollect that he made enquiry of any one; his belief in this case is founded on his usual course of proceedings in similar cases, and not from any certain recollection. Mr. Lofland usually gave him information as to the residence of endorsers; and when he could not give it, the witness then obtained the best information he could get from others. He is certain he obtained his information in this case from Mr. Lofland, or some other person who he supposed knew the post-office of the defendant.
The plaintiff proved by Charles Lofland, cashier of the Bank, that he gave instructions to Mr. Rose, the notary, in what manner to notify the endorsers of this note,, and the witness supposes the notary mailed notices according to the information thus given, unless he obtained more satisfactory information from others. He recollects hearing at the board, something about the residence of the defendant, and afterwards of enquiring about the proper post-office to address him; and upon the information obtained, gave directions to Mr. Rose. The witness cannot say certainly of whom he made enquiry,-but is in the habit of making enquiry of merchants and business men, who are most likely to know.
The defendant proved by several witnesses — publishers of newspapers and others— that they could have given correct information as to his residence, had enquiry been made of them.
Upon this evidence, we are called upon to say that the jury were guilty of rashness in finding a verdict for the defendant, — that the evidence greatly preponderates against the verdict, and that is wholly unsupported by proof.
We have had occasion at the present term, in the case of Harris against the Farmers' and Merchants' Bank of Memphis, to decide, that a notary public, as the agent of a bank, has used due diligence if he lias made enquiry of the cashier of the bank from whom he has received direct and positive information of the place of residence of a party and has sent notices according to that information, although it turns out that the notice was sent to the wrong post-office.
Tlie cashier of a bank is usually as well informed as to the residence of parties to paper negotiated at the bank, as any other person is likely to be, and he is generally a man of character and intelligence. If he assumes to know a party’s residence, and gives to the notary direct information on the subject, it is unreasonable to require that *522 he should continue his enquiries after he has received information with which he has a right to be satisfied. The cashier of the bank has no interest in the paper; and the objection, that information from the holder of the paper only, is not sufficient, does not apply to him.
The question, then, for the jury, in this case, was, whether enquiry was made by the notary, of the cashier, who assumed to know the residence of the defendant, and give direct information, upon which the notary acted.
The jury have found that these facts were not sufficiently established; and we cannot say, from the proof, that they were clearly wrong.
The evidence conduces to prove these essential facts; and had the jury found for the plaintiff, we would not have disturbed the verdict. On the contrary, neither the notary-public nor the cashier of the bank speak of the transaction with any certainty of recollection as to what occurred in this particular case. The notary expressly says, he has no distinct recollection that he enquired of any one; but he expresses a strong belief that he did so, because it was bis usual custom in such cases. Now, the usual custom of a notary is not sufficient evidence of his diligence, in a case where*he has no recollection of the facts. The strength of the witness’s belief, that he made due enquiry and acted upon it, does not give any weight to his evidence; for that belief is referable solely to his confidence resulting from his knowledge of his usual habits of diligence in such cases.
The testimony was entitled to be weighed and considered by the jury, as constituting a circumstance tending to prove the fact of diligence, but of itself was not sufficient proof. This evidence is somewhat strengthened by Mr. Lofland’s testimony; whostates, that he gave the notary instructions where to send notices in this case. But his own knowledge as to the defendant’s residence seems to have been vague and uncertain. He had heard something said about it at the board, and he made enquiries afterwards about the proper post-office to address him.
This evidence leaves the matter still in some uncertainty. Mr. Rose does not recollect the information given him by Mr. Lolland, so as to be able to statQjrom memory, that he sent the notice to the post-office indicated by Lolland; nor does Lolland remember to what place he gave directions to send it, so as to identify his instructions with the fact, as it now appears in proof.
Upon the whole, the proof left the questions upon which the defendant’s liability depends, in doubt and uncertainty; so that we should be overturning our long established and uniform rule upon the subject, were we to grant a new trial.
Affirm the judgment.